GEORGE E. VAN WINKLE, executor of the last will and testament of George W. Van Winkle, deceased, complainant-respondent,

*v.*

MARYANNA FORDONSKY and IGNACY FORDONSKY, her husband, FRANK FORDONSKY, defendants, and JACOB TUCKER, defendant-appellant.

[Submitted May 26th, 1933.   Decided September 27th, 1933.]

*Messrs. Benny & Cruden (Mr. Burgess A. Cruden,* of counsel), for the complainant-respondent.

*Mr. Maurice C. Brigadier,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

Complainant filed a bill for the foreclosure of two mortgages.   Jacob Tucker, a defendant holder of two mortgages

subsequent in time of execution, answered and counter-claimed in the effort to establish priority for one of his mortgages over those of the complainant. The court of chancery, on the advice of Vice-Chancellor Fallon, rendered a decree establishing priority to both of complainant's mortgages and dismissing the counter-claim. Tucker appeals.

Complainant's mortgages, each in the amount of $7,000, were executed January 31st, 1928, by Maryanna Fordonsky and Ignacy Fordonsky, her husband, the owners of the property. The first of the Tucker mortgages was executed by the same mortgagors on October 23d, 1928. In the year 1931 both taxes and water rents on the property were long in arrears, the taxes back to and including 1928, although the evidence shows no threat by the municipal authorities to take measures with respect thereto. The complainant, however, was insisting, under threat of foreclosure of his mortgages, that the taxes should be paid. These demands culminated in a letter written by Roberson & Roberson, attorneys-at-law, to Ignacy Fordonsky under date of July 15th, 1931:

"Dear Sir: Mr. George Van Winkle who holds the mortgages on your Broadway property insists upon the taxes being entirely paid or the mortgages being paid on the next interest day. Mr. Van Winkle will not wait any longer than the next interest date for the payment of these city liens. Therefore we would advise you to make some arrangement either to raise a second mortgage on this property or on any other property you own for an amount sufficient to clean up the city liens."

The defendant Frank Fordonsky, son of Ignacy and Maryanna Fordonsky, came to Mr. Horace K. Roberson and instructed the latter to draw and attend to the execution of a mortgage from Frank Fordonsky to Tucker, informing Roberson at the time that the elder Fordonskys were to convey the property to Frank and that Tucker would loan the money, taking a mortgage and an assignment of the rents. Roberson drew the necessary papers, on employment by the Fordonskys, and, acting as their attorney, attended to the execution of the papers, received from Tucker $4,000, the principal amount of the mortgage, and disbursed the funds, including

the payment of taxes and water rents (for both of which the city gave absolute receipts running to the owner) and the payment to the firm of Roberson & Roberson of $279.05 for services and disbursements rendered on behalf of the Fordonskys in this transaction. The bond and mortgage were delivered to Tucker as was also an assignment of rents signed by Frank Fordonsky, the assignment running to Tucker and authorizing him to apply $100 per month on account of the principal of his two mortgages, also to pay the monthly interest on those mortgages and the interest upon complainant's "two first mortgages," and to apply the balance to taxes, water rents, fire and liability insurance premiums and necessary repairs. A year later, July 31st, 1932, interest was in default on complainant's mortgages, and on October 6th, 1932, the present bill was filed bringing in Tucker as a party defendant, setting up his two mortgages, one of $3,000 and the other of $4,000, and charging that the Tucker mortgages were subject to the lien of the complainant's mortgages. Tucker answered that the balance of $2,700 remaining due on the mortgage executed to him July 31st, 1931, was advanced for the express purpose of paying off the tax liens and the liens for water rent, and that by reason thereof Tucker had been subrogated to the rights and liens of the city of Bayonne and was entitled to the relief and aid of the court of equity in effecting and enforcing them against the premises. The counter-claim set up the same allegations as a cause of action.

Appellant's first point is that the court erred in finding that Tucker was not entitled to be subrogated to the lien of the city of Bayonne, and in support of his contention cites *Homeopathic Mutual Life Insurance Co.* v. *Marshall, 32 N. J. Eq. 103; Fiacre* v. *Chapman, 22 N. J. Eq. 463; Farmer* v. *Ward, 75 N. J. Eq. 33; Schatt* v. *Grosch, 81 N. J. Eq. 199,* and *Jackson Trust Co.* v. *Gilkinson, 105 N. J. Eq. 116.* There is authority that a second mortgagee paying the tax on the mortgaged premises, in law a superior lien to the first mortgage, to protect his interest and incidentally that of the prior mortgagee from extinction, is entitled to be subrogated, but equitable subrogation is purely an invention of

equity to accomplish justice and does not obtain where harm would result. *Warranty Building and Loan Association* v. *Cimirro Construction Co., 111 N. J. Eq. 8.* The vice-chancellor was clearly of the mind that the loan of the moneys by Tucker was not for the purpose of protecting the latter's interest in the property against a pressing demand by the municipal authorities but was, on the contrary, to protect the mortgagor and Tucker as a subsequent lienor against the crisis of a foreclosure of the first mortgages; and the proofs amply sustain that conclusion. Tucker did not directly pay the municipal bills and rely upon that payment as a means of subrogation. He loaned the money on a bond and mortgage and, so far as the proofs or the proffered proofs go, relied for security upon the bond and mortgage and upon an assignment of rents which, by its terms, recognized the complainant's mortgages as first mortgages and provided for the payment of interest thereon. Complainant, fearful as to the value of his security in view of the increasing tax liens, required, under pain of immediate payment of the principal amounts of his mortgages, that these liens be paid. The mortgagor forthwith procured the funds so that the municipal liens might be paid and the complainant satisfied. To hold that Tucker in loaning the moneys thereby succeeded to the position of the municipal lienor and became an encumbrancer prior to the first mortgages would be to set up a legal situation precisely the converse of what the parties intended. To do that would not be equity. The assignment of a lien is not the payment of it.

Appellant's second point is that a municipal lien for taxes is paramount over a mortgage lien. That, of course, is obvious.

It is said thirdly that the court erred in overruling proof of Tucker's right to conventional subrogation. The point is concerned with the overruling of thirty questions—too numerous for discussion *seriatim.* The offered proof was in part of conversations between Fordonsky and Tucker, which, being had in the absence of the complainant, were not admissible against him; and this, because the payment and removal of

the tax liens directly involved the complainant, were made on his demand and constituted the condition upon which the payment of his mortgages was, until a still further default, deferred. The case is in this important feature distinguishable from all the cases, in which subrogation has been allowed, that have been brought to our attention. Further, the questions were in part to prove knowledge either on Mr. Roberson's part or on the part of the complainant that the moneys were advanced by Tucker with the understanding that they were to be applied as they were in fact applied. Such knowledge, if it existed, would not, we think, be material. Testimony was neither given nor offered that proved or tended to prove any agreement, to which the complainant was a party or of which he had knowledge, that the appellant was to be subrogated or that the municipal liens were to be kept alive in any degree or for any purpose

It is finally said that the defendant Tucker is not estopped from asserting his right to subrogation. We reach our conclusion upon meritorious issues and not upon the theory of an estoppel. The facts of the case simply do not give the foundation upon which subrogation may rest.

Because appellant so asserts, we have assumed that unpaid water rents constitute a lien, though we find no such proof, are cited to no pertinent law, and we do not pass on the question.

The decree below will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—None.